[*General Term, January*, 1873.]

## FRED. BERKEMEYER AND WIFE *v.* JOSEPH KELLERMAM AND WIFE.

A daughter, on the day of coming of age, made a conveyance, for sufficient consideration, to her mother and stepfather, as a family adjustment of their respective rights in certain property, which was devised to the mother and daughter by the father and husband, and on the improvement of which the stepfather had expended his own moneys; and it appearing that the settlement was fair and reasonable, and that there was an absence of fraud:

*Held,* that the mere relations of the parties and other slight circumstances, though tending in some degree to show undue influence over the child, is not enough to authorize a court of equity to set aside the conveyance. Such transactions between parents and children will be regarded with favor, and the court will not minutely weigh the considerations on one side or the other.

*Stanton & Richards,* for plaintiffs.

*Lincoln, Smith & Stephens,* for defendants.

HAGANS, J.   This suit was brought to set aside a conveyance of real estate on the ground of fraud and undue influence and for an account.

John H. Overbeck, about the year 1844, bought of George W. Tucker for $650, say, thirty-four feet of ground on the northeast corner of Eighth and Freeman streets, in this city, fronting one hundred feet on Eighth street. Overbeck was poor, and, up to the time of his death, had paid on account of the purchase, out of his earnings, $250, and had erected

a little house of four rooms, which was unfinished and partly paid for. Overbeck died, having made a nuncupative will, in which he bequeathed to his widow, now the wife of the defendant, Kellerman, and his two children by her—a girl and boy, then four and five years of age respectively—this real estate, two horses and a wagon, household furniture, and eighty acres of land in Mercer county, in this state. This will was not proved or recorded in that county; but letters of administration were taken out in this county on the estate, and the appraisers set off $500 to the widow for her year's allowance and what household effects there were. No further steps seem to have been afterward taken to settle up the estate. The horses and wagon were appraised at $150 and the house at $400. No guardian was appointed for the infant children. It appears the estate was in debt about $1,200, including the balance due Tucker on the lot. The widow went to work at once; continued to haul stone and brick with the horses and wagon, which had been the business of her husband, and in process of time, succeeded not only in supporting her family, but in paying all the debts of the estate, including the balance due on this lot. In June, 1846, Tucker conveyed the lot to the widow and two children, according to Overbeck's will. After this time, the lot was filled up and the streets graded and paved. Shortly after, the boy died, and his sister, now the wife of plaintiff, became the owner of an undivided two-thirds of the property. Soon after this, the widow of Overbeck intermarried with Joseph Kellerman, defendant; and in 1851, was erected, partly with his means and with knowledge of the state of the title, a three-story brick building in front and a two-story brick in rear, at a cost of some $2,000. Lisette remained with her mother; was sent to school; did some housework; learned to sew, paying her wages to her mother, by whom she was boarded and clothed, until she was married, in May, 1862, to Fred. Berkemeyer, the plaintiff.

On the evening, between eight and nine o'clock, of September 1, 1859, the day Lisette was eighteen years old, her mother, without having previously spoken to her on the subject and without knowing, as she says, of her rights in the property, invited her to go to F. X. Dengler's house. Dengler was a lawyer in this city, of good standing, with whom her mother had previous interviews on the subject. It appears Mr. Dengler, at the request of her mother to arrange the matter, had made, on the representations of Mrs. Kellerman, a careful estimate of the value of Lisette's interest in this lot, taking into consideration the history of the family and the proper charges and credits accordingly, the items of which have been lost. He ascertained that the value of Lisette's interest in the lot was $600. Thereupon Mr. Dengler prepared a deed for the lot from Kellerman and wife to Lisette, in consideration of $2,800; and also a deed from Lisette to Kellerman and wife for the same, in consideration of $3,400, the deed to them jointly being made because Kellerman had largely contributed to the improvement of the lot. Mr. Dengler also prepared a mortgage on the lot, from Kellerman and wife to Lisette, for $600, payable in two years, with interest. Accordingly, on the evening of the day Lisette became of age, Mr. and Mrs. Kellerman, Father Somers (a Catholic priest, to whose congregation the parties belonged), Lisette, and Mr. Dengler being present, and after the whole matter was fully explained to Lisette by Mr. Dengler, the papers were executed as Mr. Dengler had drawn them. All the parties assented to the fairness of the arrangement; and the deeds and mortgage were delivered. Mr. Kellerman at first seemed reluctant to execute the mortgage, but finally did so; and the parties declared themselves satisfied and left Mr. Dengler's house.

The lot was valued by the parties at something over $100 a foot, which the court below found to be its value at the time. Adopting $3,400 as the value of the lot, the amount charged against it appears to be $2,800. The court found

that this amount was made up, beginning with Overbeck's death, at a time when the memory of all the parties was fresh. Allowance was made for Mrs. Overbeck's labor, expenses of filling up lot, taxes, assessments for streets, etc., taking care of and educating Lisette, interest, expenditures by Mr. Kellerman on the lot after the marriage, and perhaps an allowance for Lisette's earnings from, say, fifteen to eighteen years of age. These items seem to be fair to take into consideration for the purposes of the arrangement.

It farther appears, that the mortgage was, in fact, in Lisette's control from the time of its delivery to her; that the interest was paid to her, and that ten years after she was of age and seven years after her marriage, the principal was paid to her and her husband, with full knowledge of all the facts.

A number of minor points in the testimony appear, which do not seem now necessary to consider. One of these only deserves special mention. It appears that Mr. Kellerman paid the taxes on the Mercer county land for a number of years; that Berkemeyer had contracted to sell it for $1,200, and refused to refund the taxes, by reason of which the purchaser refused to complete the contract of purchase. But Kellerman and wife, in open court, offered to release any claim for the taxes and to convey the land to Mrs. Berkemeyer.

On the hearing, the court dismissed the petition, but directed the release and conveyance mentioned.

But for the exertion and labors of Mrs. Overbeck, the estate, if closed up, would have been largely insolvent. The indebtedness was $1,200, and the allowance to the widow for her year's support was $500 more, while the assets were utterly insufficient to meet these demands. In looking into the history of the family as disclosed in the testimony, it can not be said this family arrangement and settlement was unfair to Lisette. When Overbeck died

the family had nothing; and whatever Lisette had at the time of the settlement was almost wholly due to the mother's frugality, strong purpose, and admirable management. And if the mother had been strict in exacting her rights it might be said, Lisette was entitled to nothing whatever, but that it all belonged to the mother. She might well, *ex œquo et bono*, have taken the conveyance from Tucker in her own name exclusively. In this view the taking of the deed to herself and children was a mere matter of bounty to them.

It is said this is a clear case for the interposition of the court on the ground of fraud and undue influence, growing out of the other facts and circumstances in the case. It is claimed that here was a deed made by a daughter to her mother and stepfather on the very day she was of age, in adjustment of an account, the items of which were furnished at the instance of the mother to an attorney employed by her, under whose direction the whole matter was completed.

It must be observed this is not a case of voluntary convevance, without consideration, from a daughter to a mother and stepfather. But the whole transaction is in fact a family settlement. For Mrs. Kellerman had not only expended her own labor and money on the property, but Mr. Kellerman had also expended his moneys in improving the property by the erection of a house on it, which, in equity, Lisette and Mrs. K. should not wholly enjoy or own. The testimony shows that if the property had been worth, at the time, $4,500, the payment to Lisette of $600, with the title vested in him and Mrs. Kellerman would about repay him for his expenditure. Again, it appears in the testimony that there were children, the fruit of this second marriage, and it was entirely reasonable that in the arrangement Mr. Kellerman's interest should be recognized and adjusted.

The case is wholly outside of that class of cases cited to

us, relating to fiduciaries, as well as that other class of cases relating to voluntary conveyances between parents and children. In this latter class, fraud and undue influence is not presumed, as in the former, but must be proved. The burden of proof is on the plaintiffs here. *Long* v. *Mulford*, 17 Ohio St. 504, citing *Smith* v. *Kay*, 7 H. of L. Cases, 751.

There does not appear any positive evidence of confidence abused or betrayed, or influence upon the hopes or fears of Lisette, used to effect any wrong or dishonorable purpose, or any oppression to force the result, unless they be found in the circumstances surrounding the parties at the time. As already stated, the consideration of the transaction was not unfair or inadequate. On the contrary, it is the case of a girl on the day of her age, agreeing to a settlement or arrangement of family matters, prepared by a gentleman of known integrity, who acted impartially, fair in itself, and entirely reasonable and honorable to all the parties concerned; and presenting no facts sufficient to show that the transaction was not perfectly fair and voluntary on Lisette's part. And there appears no reasonable ground to presume otherwise. And this view of the case disposes of most of the authorities cited to us on the argument by the plaintiff in error.

It is not every case even of a voluntary conveyance by a child to a parent that is to be deemed void. There are no considerations of public policy that requires that it should be so held. The case of *Jenkins* v. *Page*, 12 Pet. 253, is a very interesting and exhaustive case in point, in which the authorities are discussed. Indeed, the court in that case, which was one of a conveyance from a daughter to her father, goes so far as to say that, although there may be circumstances tending in some small degree to show undue influence, yet if the transaction appears reasonable, it has been considered enough to outweigh slight circumstances so as not to affect the validity of the deed. For to hold otherwise would be to say that a parent, instead of

wishing to promote the interest and welfare of a child, would be seeking to overreach and defraud it. The presumptions are all the other way. *Taylor* v. *Taylor*, 8 How. 201; *Bergen* v. *Udall*, 31 Barb. 25; 1 Story's Eq. Jur., sec. 309 *a*.

Regarding this transaction as a family settlement, in which the parties were equally advised of their rights, and there was no concealment or imposition, it would be unobjectionable. The matters involved in it were certainly such as Lisette ought to recognize and approve, and be desirous to effectuate the end, because it was honorable and right.

In *Baker* v. *Bradley*, 7 De G. McN. & G. 620, the language of the court commenting on the case is very strong: "Transactions between parent and child may proceed upon arrangements between them for the settlement of property, or of their rights in property in which they are interested. In such cases the court regards the transactions with favor. It does not minutely weigh the consideration on one side or the other. Even ignorance of rights, if equal on both sides, may not avail to impeach the transaction."

To the same effect are *Stapleton* v. *Stapleton*, 1 Atk. 5; *Corey* v. *Corey*, 1 Ves. 18; *Kenchant* v. *Kenchant*, 1 Bro. Ch. 374; *Gordon* v. *Gordon*, 3 Swanst. 463; *Hartop* v. *Hartop*, 21 Beav. 265; *Hoghten* v. *Hoghten*, 15 Beav. 300; *Wycherly* v. *Wycherly*, 2 Eden's Ch. 178; *Puller* v. *Ready*, 2 Atk. 592; *Green* v. *Goodall*, 1 Cold. 409.

We have said nothing about the delay in filing this petition, which was on May 31, 1870, or of the subsequent ratification of the settlement by the receipt of the interest and principal of the mortgage. These facts might be of no moment, if the case presented sufficient reasons for the interference of the court on other grounds.

As to the decree of the court, directing the defendants to convey to Lisette the Mercer county lands, the defendants do not complain and the plaintiffs can not.

On the whole case, we think the judgment ought to be affirmed.